UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KENNETH A. THOMAS MD, LLC, a Connecticut limited liability company, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>IQVIA HOLDINGS, INC., a Delaware corporation<br><br>    *Defendant*. | Case No.<br><br><br>**COMPLAINT – CLASS ACTION** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Kenneth A. Thomas MD, LLC ("Plaintiff"), brings this Class Action Complaint and Demand for Jury Trial against Defendant IQVIA Holdings, Inc. ("IQVIA"), to stop its practice of sending unsolicited fax advertisements in violation of the Telephone Consumer Protection Act, and to obtain redress for all persons and entities injured by its conduct. Plaintiff alleges as follows upon personal knowledge as to itself and its own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by its attorneys.

**NATURE OF THE ACTION**

1. IQVIA is a data collection and related services company.

2. This case challenges IQVIA's practice of sending unsolicited fax advertisements to healthcare professionals and consumers.

3. IQVIA's faxes solicited recipients' survey taking skills in return for a fee as part of Defendant's effort to commercialize and profit from its data collection products and services.

*See, e.g.,* copies of the fax advertisements IQVIA sent to Plaintiff, which are attached as Exhibit A.

4. The faxes also announced the commercial availability and touted the quality of IQVIA's services, including the National Healthcare Census and another "nationally recognized, HIPAA-compliant research study for the "benefit" of, among others, "private-sector establishments across the globe."

5. Defendant sent the faxes at issue to Plaintiff and the Class without their consent and without an established business relationship with them.

6. As such, Defendant's fax advertisements violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and caused Plaintiff and putative members of the Class to suffer actual harm, including the aggravation and nuisance of receiving such faxes, the loss of use of their fax machines during the receipt of such faxes, and other expenses.

7. Accordingly, Plaintiff seeks an injunction requiring Defendant to cease all unauthorized fax-based marketing activities, as well as an award of statutory damages and costs.

## PARTIES

8. Plaintiff Kenneth A. Thomas MD, LLC is a Connecticut limited liability company.

9. Defendant IQVIA is a Delaware corporation headquartered in Durham, North Carolina. Until November 2017, IQVIA was known as QuintilesIMS. QuintilesIMS was formed in October 2016 as a result of a merger between Quintiles and IMS Health. Prior to that, in February 2016, IMS Health acquired an adjacent business named AlphaImpactRX and the ImpactNetwork brand.

## JURISDICTION AND VENUE

10. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

11. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant is headquartered here and the wrongful conduct giving rise to Plaintiff's cause of action occurred in and or was directed from this District.

## COMMON FACTUAL ALLEGATIONS

12. IQVIA provides services to the healthcare and pharmaceutical industries including aggregating data collected from doctors' offices, performing market analyses, marketing, providing medical sales forces.[1]

13. One of IQVIA's commercial services is Physician Insights 360, for which IQVIA pays doctors' offices and other medical facilities for information on what types of patients they are seeing, their typical ailments, treatments, medications they are prescribing, and then sells that aggregated data to pharmaceutical companies that can then target their marketing and sales directly to those doctors and facilities.

14. IQVIA exposes this strategy in their presentations:

> *"Physician Insights 360 contains **cutting-edge referral intelligence** using superior methodology in analyzing patient flow to identify the significant referral events, **prior treating doctors**, and **most likely referring providers**. The data is more comprehensive than competitors' **enabling precision targeting to find the physicians and patients you want**, by providing insights into provider practice profiles, procedures performance profiles. A best-in-class technology platform helps you act upon these insights harnessing the power of the data to provide relationship management support that empowers Physician Liaisons in their personal outreach and to create highly targeted physician and patient marketing"*[2] *[emphasis added].*

---

[1] https://www.iqvia.com/solutions/commercialization/sales-force-and-marketing-performance
[2] https://www.iqvia.com/locations/united-states/providers-segment/physician-insights-360

3

15. IQVIA goes on to advertise: "Find physicians with patients you want to drive business development through our market-leading Physician Intelligence Solution."[3]

16. As part of an overall marketing plan to advertise their Physician Insight 360 and other analytics products and services, IQVIA sends unsolicited faxes to doctors soliciting them to enter into a commercial transaction with IQVIA and to complete surveys about their practices and pharmaceutical recommendations for money or other forms of payment.

17. For example, in the faxes IQVIA sent to Plaintiff, IQVIA offered monetary compensation ($30 or $35) and other compensation in the form of "Gift Cards," "Tickets," and "Merchandise" for information from Plaintiff, and declared the availability and quality of its data collection services and products for organizations.

18. IQVIA used a telephone facsimile machine, computer or other device to send the fax advertisements at issue.

19. Most of the fax advertisements at issue failed to provide recipients with the proper opt-out notice information required by the TCPA and its implementing regulations to send faxes to consumers with which Defendant may have had an established business relationship.

**FACTS SPECIFIC TO PLAINTIFF KENNETH A. THOMAS MD, LLC**

20. Between December 22, 2016 and June 28, 2018, IQVIA sent Plaintiff four unsolicited fax advertisements, three of which did not include a proper opt out notice. *See* Exhibit A.

21. Defendant did not have Plaintiff's consent or permission to send Plaintiff fax advertisements, and Defendant and Plaintiff did not have an existing business relationship.

---

[3] https://www.iqvia.com/locations/united-states/providers-segment/physician-insights-360

4

## CLASS ACTION ALLEGATIONS

22. **Class Definition**: Plaintiff Thomas brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) individually and on behalf of the class defined as follows:

> All persons and entities who, on or after four years prior to the filing of the initial complaint in this action, (1) received a fax soliciting the recipient to complete a survey, (2) sent by or on behalf of IQVIA, and (3) from whom Defendant (a) claims it obtained prior express consent to send fax advertisements in the same manner Defendant claims it obtained prior express consent to send fax advertisements to Plaintiff, or (b) does not claim to have obtained prior express consent.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) IQVIA, IQVIA's subsidiaries, parents, successors, predecessors, and any entity in which the IQVIA or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and IQVIA's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

23. **Numerosity**: The exact size of the Class is unknown and unavailable to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, IQVIA faxed unsolicited advertisements to thousands of individuals and entities who fall into the definition of the Class. Class membership can be easily determined from Defendant's records.

24. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff is a member of the Class, and if Defendant violated the TCPA with respect to Plaintiff, then it violated the TCPA with respect to the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct.

25. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any

questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) How Defendant gathered, compiled, or obtained the fax numbers of Plaintiff and the Class;

(b) Whether Defendant's faxes advertised the commercial availability or quality of property, goods, or services;

(c) Whether Defendant sent the fax advertisements without first obtaining Plaintiff and the No Consent Class's prior express consent to do so;

(d) Whether Defendant sent the fax advertisements without first obtaining Plaintiff and the Class's prior permission or invitation to do so; and

(e) Whether Defendant's faxes complied with the opt-out notice requirements of 47 U.S.C. § 227(b)(1)(C)(iii), and the regulations promulgated thereunder; and

(f) Whether Defendant's conduct was willful such that Plaintiff and the Class are entitled to treble damages.

26. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

27. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

28. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Class)**

29. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

30. The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement. . . ." 47 U.S.C. § 227(b)(1)(C).

31. Additionally, under 47 C.F.R. § 64.1200, fax advertisements must include an opt-out notice that:

    a. is clear and conspicuous and on the first page of the advertisement;

    b. states that the recipient may make a request to the sender of the advertisement not

to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request is unlawful;

c. sets forth the legal requirements for an opt-out request;

d. includes: (i) a domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and (ii) if neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or email address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement; and

e. permits an individual or business to make an opt-out request 24 hours a day, 7 days a week.

32. Defendant sent unsolicited fax advertisements many of which did not include an appropriate opt-out notice to Plaintiff and members of the Class without their consent to do so and without an existing business relationship with them.

33. By sending the unsolicited advertisement faxes at issue to Plaintiff and members of the Class without their prior express invitation or permission, Defendant violated 47 U.S.C. § 227(b)(1)(C).

34. As a result of Defendant's conduct, Plaintiff and the members of the Class suffered actual damages, including the conversion or loss of paper and toner consumed in the printing of the faxes, the loss of use of the recipients' fax machines during the time required to receive, review and route the unauthorized faxes, other costs associated with receiving the faxes, as well as increased labor expenses.

35. Plaintiff and the Class are therefore entitled to a minimum of $500 in damages for

each violative fax Defendant sent. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should treble the amount of statutory damages.

36. Additionally, as a result of Defendant's unlawful conduct, Plaintiff and the other members of the Class are entitled to an injunction to ensure that Defendant's violations of the TCPA do not continue into the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kenneth A. Thomas MD, LLC, on behalf of itself and the Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Kenneth A. Thomas MD, LLC as the representative of the Class, and appointing its counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate the TCPA;

C. An award of statutory damages;

D. An award of pre-judgement interest and costs; and

E. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a jury trial of its claim.

Respectfully Submitted,

**KENNETH A. THOMAS MD, LLC**, individually and on behalf of all others similarly situated,

Dated: February 14, 2019     By: */s/ Ted Johnson*
One of Plaintiff's Attorneys

Ted Lewis Johnson
PO Box 5272
Greensboro, NC 27435
tedlewisjohnson@tedlewisjohnson.com

9

Case 1:19-cv-00180-UA-LPA   Document 1   Filed 02/14/19   Page 9 of 10

Phone: (336) 252-8596

Avi R. Kaufman*
kaufman@kaufmanpa.com
Kaufman P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

Stefan Coleman*
law@stefancoleman.com
Law Offices of Stefan Coleman, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, Fl 33131
Telephone: (877) 333-9427
Facsimile: (888)498-8946

*Attorneys for Plaintiff and the Class*

\* *Pro Hac Vice* Admission to Be Sought